```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE MIDDLE DISTRICT OF GEORGIA
                           COLUMBUS DIVISION

GEORGIA CASUALTY & SURETY         *
COMPANY, as subrogee of Art
Angell, Bryant Sneed, Frank       *
McDonald, William Champion,
Walt Craner, Barry Grant,         *
Robert Kelly, Deborah Green,
and Liz Borg,                     *

        Plaintiffs,                *

vs.                                *       CONSOLIDATED
                                           CASE NO. 4:05-CV-87(CDL)
ATMOS ENERGY CORPORATION,          *

        Defendant.                 *

        ***and***                  *

GEORGIA CASUALTY & SURETY          *
COMPANY, as subrogee of
Woodcraft by MacDonald, Inc.,      *
Coachcraft by MacDonald,
Harold Case, Philip Lambertus,     *
Ken Kahler, Robin Corbet, Brad
MacDonald, Jim Rhodes, and         *
Larry Motos,
                                   *
        Plaintiffs,
                                   *
vs.
                                   *
ATMOS ENERGY CORPORATION,
                                   *
        Defendant.
                                   *
WOODCRAFT BY MCDONALD, INC.,
d/b/a Coachcraft by McDonald,      *
        Plaintiff-Intervenor.
                                   *
BRAD MACDONALD,
        Plaintiff-Intervenor.      *

PROGRESSIVE INSURANCE COMPANY,     *
as subrogee of Brad MacDonald
and Robin MacDonald,               *
        Plaintiff-Intervenor.
                                   *
_____
```

O R D E R

Presently pending before the Court is Defendant's Motion to Exclude Plaintiffs' Expert Douglas C. Buchan (Doc. 86). For the reasons set forth below, Defendant's Motion to Exclude is denied, but Buchan's testimony will be appropriately limited.

DISCUSSION

The basis for the pending litigation is Plaintiffs' claim that Defendant negligently failed to prevent and/or properly respond to a gas leak, resulting in an explosion and the destruction of property belonging to Plaintiffs and Plaintiffs' insured. In support of their claims, Plaintiffs proffer the expert testimony of Douglas C. Buchan, a professional witness with over forty years of experience in the gas industry. Buchan owned and operated a propane delivery company for many years and later served as a political appointee, liaison, and energy consultant with the United States government. Currently, Buchan owns a consulting business that primarily provides expert testimony related to gas incident investigation. Buchan is prepared to opine that Defendant did not comply with applicable federal pipeline safety regulations or accepted industry practices in its prevention of or response to the gas leak.

Defendant attacks both Buchan's qualifications and the reliability of his conclusions, arguing that Buchan's experience is inapplicable to the natural gas industry and that his opinions are based solely on his unsupported personal beliefs. For the reasons set forth below, the Court denies Defendant's Motion to Exclude, but

2

limits Buchan's testimony to the content and importance of the federal statutes and regulations governing pipeline safety.

**I.    General Principles of Admissibility**

Federal Rules of Evidence Rule 702 governs the admissibility of expert testimony. It provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. In applying this rule, the trial court serves as a gatekeeper and may admit expert testimony only where it is both relevant and reliable. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "District courts are charged with this gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). The proponent of the expert bears the burden of showing by a preponderance of the evidence that the proffered expert testimony is admissible. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) ("The burden of laying the proper foundation for the

3

admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.").

The language of Rule 702 imposes three specific restrictions on the admissibility of expert testimony: qualification, reliability, and assistance. First, to qualify to testify as an expert, a witness must possess specialized expertise based on knowledge, skill, experience, training, or education. *See* Fed. R. Evid. 702. Although an expert is not required to have personal knowledge of the facts at issue in the case, *see* Fed. R. Evid. 703, he must be qualified "regarding the matters he intends to address." *Allison*, 184 F.3d at 1309. Second, "the methodology by which the expert reaches his conclusion [must be] sufficiently reliable . . . ." *Id.* The proffered testimony must be "supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 590). The Supreme Court has provided a non-exclusive list of factors to assist in determining whether an expert's opinion is reliable: "(1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community." *Allison*, 184 F.3d at 1312 (citing *Daubert*, 509 U.S. at 593-94). Finally, the expert testimony must "fit" the case, meaning the testimony must be relevant to the issues at hand

and assist the trier of fact in resolving those issues. *See Frazier*, 387 F.3d at 1262-63. If the testimony addresses issues within the understanding and experience of an average citizen, it is not considered helpful to the jury and is properly excluded under Rule 702. *Id.* Put differently, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.*

**II. Analysis of Proposed Expert Testimony**

    A.    <u>Qualification</u>

Defendant first contends that Buchan is not qualified to testify as an expert in the field of natural gas primarily because Buchan's experience "relates exclusively to the propane industry." (Def.'s Br. in Supp. of Its Mot. to Exclude Pls.' Expert Douglas C. Buchan 9.) While it is certainly true that the two fuel systems differ in some respects, Buchan has significant experience specifically related to the natural gas industry and its governing regulations.[1]

---

[1] Although Buchan admitted that he had not considered Georgia's specific regulations in analyzing the Coachcraft fire, Georgia has adopted the federal standards in their entirety:

> [A]ll Rules and Regulations prescribed by the United States Department of Transportation applicable to the "Transportation of Natural and Other Gas by Pipeline: Minimum Safety Standards" (C.F.R. 49, Parts 191 and 192) are by this Rule made the Rules and Regulations of the Georgia Public Service Commission for the safe installation and operation of all natural gas transmission and distribution facilities by companies subject to the jurisdiction of the Commission within this State.

Ga. Comp. R. & Regs. 515-9-1-.01 (2007). Moreover, it is clear that GPSC "has not varied from these Federal standards." *Id.* Accordingly, any experience that Buchan has with the federal standards is necessarily relevant to his experience with the Georgia standards.

5

Although Buchan spent the majority of his professional career as a propane distributor, he also has extensive experience working directly with the natural gas industry. Buchan served as the Deputy Assistant Secretary of Energy with the United States Department of Energy from 1989 to 1993, a time when the Department was responsible for regulating interstate pipeline distribution of natural gas. Buchan served as a liaison between the government and the natural gas industry, requiring him to work closely with the industry to ensure the integrity of the distribution system in preparation for potential deregulation. After his formal government service, Buchan served as an energy consultant to the United States government until 1999.

Buchan also has significant experience with regard to the level of emergency response required by the federal regulations. The record indicates that Buchan: (1) developed and coordinated national energy emergency conferences covering topics such as coordination of emergency response between local natural gas distributors and local government officials, including fire departments; (2) participated with response teams to Grade 1 leaks involving both propane and natural gas; (3) participated in gas emergency responses on a routine basis as a member of the Pinellas County, Florida gas board; and (4) trained fire department personnel in appropriate responses to gas emergencies.

Finally, Buchan has significant experience with regard to the training requirements of the federal regulations. In addition to his coordination of training conferences and receipt of comprehensive

6

operator qualification training, Buchan is a member of the Energy Training Network, a group formed to provide operator qualification training consistent with the requirements of the federal regulations. In addition, Buchan has been qualified by the Energy Training Network to assess whether the network's evaluators are properly administering operator qualification training to natural gas operators.

While it may be true that Buchan has not had significant experience actually operating natural gas pipelines for a local distribution company or enforcing pipeline regulations, his anticipated testimony does not encompass those subjects. Buchan certainly has extensive experience with the natural gas industry and its regulations. Accordingly, the Court finds Buchan is qualified as an expert in the field of pipeline safety regulation.

### B. Reliability

Defendant next argues that Buchan's conclusions are not generally accepted in the industry and that Plaintiffs cannot establish the reliability of Buchan's conclusions by reference to any of the *Daubert* factors. Specifically, Defendant contends that: (1) Buchan's conclusions fail to utilize a published methodology accepted in Georgia; (2) Buchan's opinions and conclusions have not been submitted for peer review; (3) Buchan has never performed any empirical or scientific studies to test his conclusions; (4) Buchan has never studied operating practices or training materials of natural gas distribution companies in order to develop his concept of industry standards; and (5) Buchan has failed to demonstrate how he

7

reached his conclusion that had the leak been discovered sooner, the gas would not have ignited.[2]

Plaintiffs point out that Buchan's "opinions are based on (1) his experience and training in the industry, (2) his thorough knowledge of the federal safety regulations, and (3) his knowledge of accepted industry practices as relates to emergency responses and operator qualification." (Pl.'s [Ga. Casualty Ins.] Resp. to Def.'s Mot. to Exclude Pl.'s Expert Douglas C. Buchan 12.) In addition, Buchan deposed that he based his opinions, in part, upon studying the operations manuals and operating practices of gas distribution companies that he maintains as reference material.

The Court finds that Buchan's extensive experience with the energy industry renders his observations regarding the natural gas industry reliable. However, insofar as Buchan *concludes* that Defendant was negligent or violated regulations, Plaintiffs have not sufficiently demonstrated that Buchan's conclusions are supported by the type of testing, publication, peer review, or acceptance within the natural gas industry contemplated by *Daubert* and *Kumho*.

---

[2]Plaintiffs apparently do not intend to use Buchan to establish causation in this case. To the extent that they do, the Court finds that Buchan's testimony with respect to causation is inadmissible. Plaintiffs have made no showing that any of Buchan's opinions regarding causation are reliable. Even when construing the evidence in the light most favorable to Plaintiffs, the only possible evidence weighing in favor of reliability is Buchan's experience responding to gas leaks and observing gas companies' responses to emergencies. In this case, that type of anecdotal evidence alone is not enough to establish the element of reliability. *See Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1199 (11th Cir. 2002) (recognizing that while a court may rely on anecdotal evidence in its reliability analysis, anecdotal evidence alone likely will not supply reliable proof of causation).

Accordingly, the Court finds that Buchan's testimony on the content and purpose of the federal pipeline safety regulations is reliable. However, to the extent that Plaintiffs purport to use Buchan's ultimate conclusions to establish Defendant's negligence, the Court finds that Buchan's testimony is unreliable and thus inadmissible.

### C. Assistance

Finally, Defendant argues that Buchan's specialized knowledge will not assist the trier of fact in this case. Defendant contends that Buchan's testimony is merely his own common-sense opinion about how Defendant should have reacted to the emergent situation, and as such, it is inadmissible. Accordingly, Defendant maintains that Buchan's testimony "[a]t minimum," should be restricted to "[a]llowing him to testify to the content of the rules and the reason for the rules." (Def.'s Mem. in Reply to Pls.' Resp. to Mot. to Exclude Pl.'s Expert, Douglas Buchan 10-11.) In contrast, Plaintiffs contend that Buchan's testimony is necessary to help define the regulations by reference to generally accepted industry practices.

The Court finds that Buchan's testimony will assist the jury in understanding the regulations themselves and the reasons for their existence. However, the Court also finds that once the jury understands the purpose and meaning of the regulations, the question of whether a violation occurred is well within "the understanding of the average lay person." *Frazier*, 387 F.3d at 1262; *see also Tyson v. Shoemaker*, 208 Ga. 28, 32, 65 S.E.2d 163, 165-66 (1951) ("What constitutes negligence on the part of a defendant, what constitutes

the proximate cause of an injury, and what amounts to a failure to exercise ordinary care on the part of a plaintiff, are generally questions for the jury.") (internal quotation marks and citations omitted). Buchan's opinion as to whether Defendant violated the applicable regulations and his opinion as to Defendant's negligence will not assist the jury in this case. Therefore, Buchan's ultimate conclusions are inadmissible.

Ultimately, then, the Court finds that Buchan meets all three prongs of the Rule 702 analysis and may testify as an expert only as to the content and importance of the federal statutes and regulations governing pipeline safety. Buchan may not, however, opine as to whether Defendant was negligent, whether any regulatory violations actually occurred, or whether those violations or negligent acts were a proximate cause of Plaintiffs' loss. Plaintiffs have failed to show by a preponderance of the evidence that Buchan's testimony on those subjects is reliable or would assist the jury in this case.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Exclude Plaintiffs' Expert Douglas C. Buchan (Doc. 86), but limits Buchan's testimony to the content and importance of the federal statutes and regulations governing pipeline safety.

IT IS SO ORDERED, this 4th day of December, 2007.

                                                S/Clay D. Land
                                                CLAY D. LAND
                                    UNITED STATES DISTRICT JUDGE